ORDERED.

**Dated:  March 26, 2024**

_____
Roberta A. Colton
United States Bankruptcy Judge

UNITED STATEES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION
www.flmb.uscourts.gov

In re:

SAMUEL EDWARD COOLEY,

      Debtor.

_____

DATEX, INC.,

      Plaintiff,

v.

SAMUEL EDWARD COOLEY,

      Defendant.

_____/

Case No. 8:22-bk-04593-RCT

Chapter 13

Adv. Pro. No. 8:23-ap-00026-RCT

**MEMORANDUM DECISION AFTER TRIAL ON ADVERSARY COMPLAINT, COUNTERCLAIM, AND DEBTOR'S OBJECTION TO CLAIM 10 OF DATEX INC.**

      This adversary proceeding and bankruptcy case came before the Court on February 26, 2024 and March 1, 2024 at a trial on: (1) Datex, Inc.'s adversary complaint (AP Doc. 1); (2) Samuel Edward Cooley's counterclaim for conversion (AP Doc. 26); and (3) Debtor's Objection to Claim 10 of Datex Inc. (BK Doc. 28).

## I.  Background

Cooley filed for bankruptcy relief under Chapter 13 on November 17, 2022.[1]  The Court set this trial based on Datex's allegations in its proof of claim and adversary complaint that Cooley, while employed by Datex, committed fraud by lying about having anal cancer and then essentially stopped performing his job duties.  It is undisputed that Cooley was never diagnosed with Stage-1 or Stage-2 anal cancer, and he has never undergone radiation treatment for cancer.[2]

Datex also contends that Cooley breached his fiduciary duty to Datex and breached his employment agreements with Datex by lying about having cancer (and consequently lying to Datex about its need to hire, and then fire, two law firms to handle the *Wester* matter), as well as by using Datex's confidential information to gain leverage in his divorce proceedings against Michael Armanious, entering into a contract with Thomson Reuters on behalf of Datex without authority, doing legal work for another law firm, misusing a Datex-issued American Express credit card, and misusing Delta flight credits for flights paid for by Datex.  Additionally, Datex asserts a conversion claim with respect to Cooley's alleged misuse of the Datex-issued American Express credit card and the Delta flight credits.  These allegations are the basis for Datex's Proof of Claim 10-1 filed in Cooley's bankruptcy case, in which Datex asserts a claim for $192,531.37.

Additionally, Datex filed an adversary complaint seeking a finding that its claim is non-dischargeable.[3]  Specifically, Datex contends that its claim is non-dischargeable under 11 U.S.C. § 523(a)(2)(A) for fraud, § 523(a)(4) for fraud while acting in a fiduciary capacity, and/or § 523(a)(6) for willful and malicious injury.[4]  In response, Cooley asserted a counterclaim for

---

[1] BK Doc. 1.
[2] AP Doc. 100, ¶ 7-9.
[3] AP Doc. 1.
[4] AP Doc. 1.

conversion of his property that was previously in his office at Datex.[5]

At trial, the Court heard testimony from Debtor-Defendant Samual Edward Cooley (both live and via video deposition designations), Paul Wayne Hill (Cooley's former friend), Andrew Armanious (Datex's CIO and a member of Datex's Board of Directors), Marie Armanious (Datex's Controller and a member of Datex's Board of Directors), Samir Armanious (Chairman of Datex's Board of Directors), and Michael Armanious (President and CEO of Datex, a member of Datex's Board of Directors, and Cooley's husband). The Court also received numerous exhibits into evidence (AP Docs. 102, 104, 116, 117)[6] and had before it the parties' Joint Stipulated Undisputed Facts (AP Doc. 100). After the trial, the parties filed their closing arguments. (AP Docs. 118, 119). Having considered the parties' closing arguments, together with the record and the evidence adduced at trial, the Court sets forth below its findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure.

## II.  The Evidence

Plaintiff-Creditor Datex is a Florida corporation, doing business in Florida as a supply chain technology company and is headquartered in Clearwater, Florida.[7] Debtor-Defendant Cooley is a Florida and California licensed attorney.[8] Cooley served as Datex's General Counsel between January 2020 and April 2021 and, as such, he was Datex's most senior and trusted legal advisor and owed Datex a fiduciary duty.[9]

Datex is owned by the Armanious family and, therefore, is a closely held company.[10]

---

[5] AP Docs. 26, 56. Cooley asserted other counterclaims, which were dismissed by this Court. (AP Doc. 26).
[6] The only proposed exhibit not admitted into evidence was Cooley's Exhibit 8 – Cooley's recovered activity. (AP Docs. 102-8, 116).
[7] AP Doc. 100, ¶ 1.
[8] AP Doc. 100, ¶ 2.
[9] AP Doc. 100, ¶ 3, 5, 6.
[10] AP Doc. 100, ¶ 1.

During Cooley's tenure at Datex, Samir Armanious was the CEO and a director of Datex.[11] Michael Armanious, Samir Armanious's son, was the President and a director of Datex during Cooley's employment.[12]

Prior to being hired by Datex as its General Counsel, Cooley did work for Datex while he was employed at other law firms. Also prior to being hired by Datex, Cooley married Michael Armanious.

When Cooley was hired by Datex, he signed an employment agreement.[13] The employment agreement contains several key terms: (1) Cooley was an at-will employee that could be terminated at any time; (2) he was to be paid a yearly salary of $120,000; (3) he was to devote all of his time, energy, and skill to Datex and could not be employed by any other business similar to Datex's business; and (4) after 90 days, he would be entitled to 11 days of paid time off ("PTO") annually.[14]

In March of 2020, the Covid-19 pandemic caused world-wide lockdowns, which resulted in Cooley and Michael Armanious working together from their home in California. And this is where the story begins.

**A. Datex's Version of the Facts**

Datex called several witnesses that testified that Cooley told them that he had been diagnosed with cancer in early to mid-2020. First, Datex called Paul Wayne Hill, a longtime friend of Michael Armanious and former friend of Cooley. Hill testified that he learned of Cooley's cancer diagnosis in early 2020 after being on vacation with Michael Armanious and Cooley in Colorado. Hill testified that during the vacation, Cooley told him that he was waiting on test results

---

[11] AP Doc. 100, ¶ 22.
[12] AP Doc. 100, ¶ 23.
[13] AP Doc. 104-1.
[14] AP Doc. 104-1.

and that after the vacation, Cooley told him that he had been diagnosed with cancer. Hill stated that during the relevant time, he communicated with Michael Armanious and Cooley very often via phone, FaceTime, and texts and that Cooley discussed upcoming medical appointments and cancer treatments (including radiation).

Next, Andrew Armanious, Datex's CIO and a Datex director (and Michael Armanious' brother), testified that he learned of Cooley's cancer diagnosis from Cooley at a June 2020 emergency meeting of the Board of Directors (the "Board"). Specifically, he testified that at the emergency meeting, Cooley stated that he had advanced anal cancer that required treatment, and as a result, Datex would need to retain outside counsel to handle the *Wester* matter (a sexual harassment claim by a former employee against Datex). Marie Armanious, Datex's Controller and a Datex director (and Michael Armanious' mother), also testified about Cooley's cancer disclosure at the emergency Board meeting. Michael Armanious and Samir Armanious also testified about the cancer disclosure at the emergency Board meeting, but they also stated that Cooley had told them of the cancer diagnosis earlier—in March of 2020. No records of the Board meeting were introduced.

Michael Armanious testified that Cooley told him about the cancer diagnosis on March 3rd or 4th of 2020. Michael Armanious stated that he told his father about the cancer diagnosis after he learned of it, and that later, Cooley told his family and friends about the diagnosis.

Marie, Samir, and Michael Armanious all testified that Datex allowed Cooley to take as much time off from work as he needed due to the cancer diagnosis and that Cooley took substantial time off and essentially stopped performing his job duties. Additionally, Datex hired the Trenam law firm as outside counsel to handle the *Wester* matter.[15]

---

[15] Trenam was later replaced by other law firms.

Andrew Armanious testified that Datex uses the HR system, Paylocity, to track PTO requests and approvals.  According to a Paylocity report of Cooley's PTO, Cooley took 968 hours of PTO while employed at Datex (the equivalent of 121 eight-hour days).[16]   Additionally, he testified that Cooley was an administrator of Paylocity, so Cooley had the ability to manipulate the amount of PTO reflected on the report. Although Andrew Armanious purported to verify and authenticate the Paylocity report, he conceded that it was Michael Armanious that ran the report. He also stated that someone else would manually enter the PTO information into Datex's payroll system and that he was not involved in payroll side of paying out an employee's unused PTO.

There were also several exhibits admitted into evidence consisting of emails by Cooley telling others that he had been diagnosed with cancer.  However, *when* he was allegedly diagnosed with cancer differs throughout.  For example, on October 15, 2020, Cooley emailed an attorney at Trenam and stated that he had been diagnosed with Stage-1 anal cancer the week before and was awaiting his treatment plan, which would include surgery and radiation.[17]  On January 20, 2021, Cooley sent an email to an attorney at Trenam (and forwarded it to the Armanious family working for Datex), stating that shortly after Brandy Wester sent her initial demand to Datex on June 19, 2020, he was diagnosed with cancer and that treatment "included a painful surgery and multiple rounds of radiation, in December 2020."[18]  On February 16, 2021, Cooley sent emails to a friend regarding a referral recommendation for Datex, and he stated that he had been diagnosed with Stage-2 anal cancer in August 2020.[19]  On March 3, 2021, Cooley emailed an attorney at the Johnson Pope law firm regarding the *Wester* matter and stated that he was "battling anal cancer" and that he had an appointment with his colorectal surgeon that week.  However, Cooley has

---

[16] AP Doc. 104-17.
[17] AP Doc. 104-2.
[18] AP Doc. 104-5; AP Doc. 104-6; AP Doc. 104-8.
[19] AP Doc. 104-10.

acknowledged on the record that he has never been diagnosed with Stage-1 or Stage-2 anal cancer, nor has he undergone radiation.[20]

Samir Armanious testified that had he known that Cooley had not been diagnosed with cancer, he would have fired Cooley for taking substantial time off and not performing his job duties.  Furthermore, Michael Armanious testified that Cooley was expected to handle all of Datex's legal matters, including the *Wester* matter, which he did not do, and instead, Datex had to retain outside counsel.  Other than the *Wester* matter referred to outside counsel, no evidence was presented of any specific matter that Cooley did not handle or any deadline that he had missed.

On February 1, 2021, Cooley and Datex entered into an Executive Employment Agreement, as Cooley was updating all C-level executives' employment contracts.[21]  For the purposes of this trial, the main differences between this second agreement from the original employment agreement is that this second agreement added the provisions that Cooley could not make any contracts on behalf of Datex without first obtaining the express written consent of the Board, and the second agreement included a Code of Ethics.[22]

Cooley requested salary increases from Datex at the end of 2020 and in early February 2021.[23]  According to Samir Armanious, he denied these requests (as Cooley was not performing his job duties), telling Cooley to get better first and then his salary increase request would be discussed.  In response, Cooley would threaten to resign.[24]

According to Samir Armanious, by February 2021, Cooley was still taking excessive time off, so Datex hired Shanna Lindemeyer as Associate General Counsel to help Cooley with Datex's

---

[20] AP Doc. 100, ¶ 7-9.
[21] AP Doc. 100, ¶ 18.
[22] AP Doc. 104-7.
[23] AP Doc. 100, ¶ 19; AP Doc. 104-9.
[24] AP Doc. 104-3; AP Doc. 104-4.

legal matters.  He testified that Datex's legal matters had not increased between January 2020 and February 2021, but Datex needed to hire Lindemeyer because Cooley was not doing any work.  He further testified that Lindemeyer remains as Datex's sole General Counsel despite the fact that Datex has doubled in size and doubled the amount of legal work that needs to be done.

On March 31, 2021, Cooley abruptly provided formal notice to Datex of his intent to resign, effective April 30, 2021.[25]  However, Datex terminated Cooley's employment on April 14, 2021.[26] Datex paid Cooley his full salary through the end of April, and Datex also paid Cooley for his alleged remaining PTO in his final paycheck.  However, according to Marie Armanious, Cooley did not have any remaining PTO.  She and Samir Armanious testified that Datex paid Cooley the amount that he requested for accrued PTO out of fear, as Cooley had previously threatened Michael Armanious and Datex.  However, nothing was introduced to show that Cooley had requested compensation for unused PTO.

During his employment as Datex's General Counsel, Datex provided Cooley with an American Express credit card.[27]  There was no written agreement between Datex and Cooley regarding his use of the American Express credit card.[28]  According to Samir Armanious, Cooley could use the American Express credit card for business expenses, which were paid for by Datex; Cooley and Michael Armanious were expected to pay for non-business expenses charged to the American Express credit card.  On April 2, 2021, after giving notice of his resignation, Cooley made two purchases at the Apple Store on the American Express credit card—for $99 and $660.16.[29]  Michael Armanious testified that these purchases were for a replacement laptop and a

---

[25] AP Doc. 100, ¶ 13, 20; AP Doc. 104-13.
[26] AP Doc. 100, ¶ 15.
[27] AP Doc. 100, ¶ 10.
[28] AP Doc. 100, ¶ 21.
[29] AP Doc. 100, ¶ 14; AP Doc. 104-21.

replacement cell phone.

Michael Armanious also testified that after Datex terminated Cooley's employment, he used Delta flight credits resulting from business flights that Datex had paid for (but were cancelled by Cooley) to pay for personal, roundtrip flights by Cooley to St. Louis, Missouri and Hawaii. Cooley booked these personal flights on May 28 and 29, 2021.[30]    The exhibits admitted into evidence to support Michael Armanious' testimony show that non-transferable flight credits were issued on October 7, 2020 and February 17, 2021 to Cooley and that he used $2,717.45 in flight credits to pay for those personal flights.[31]    Nothing was introduced into evidence showing that Cooley was not permitted to use these flight credits or that Datex could use these non-transferable flight credits for someone other than Cooley.

At some point in time, Datex learned that Cooley had performed legal services for his prior law firm, Maxey-Fisher, PLLC, while employed by Datex, and Cooley was paid for the work by Maxey-Fisher.[32]    Samir Armanious testified that had he known about this during Cooley's employment, he would have terminated Cooley for this.

### B.  Cooley's Version of the Facts

Cooley tells an entirely different version of the facts of this case.  Cooley testified that on September 17, 2020, he tested HPV-16 positive and that his doctor discovered possible squamous

---

[30] AP Doc. 104-19.

[31] AP Doc. 104-18; AP Doc. 104-19.  Cooley had the following flight credits: (1) credit # ending in 7847 issued on 2/17/21 for $84; (2) credit # ending in 2306 issued on 2/17/21 for $1,442.80; and (3) credit # ending in 7127 issued on 10/7/20 for $1,419.20.  (AP Doc. 104-18).  Cooley used credit # ending in 2306 for $1,442.80 towards his $1,476.81 roundtrip flight to Hawaii (paying the balance of $34.01 via credit card).  (AP Doc. 104-19, p. 8).  Cooley used credit # ending in 7127 for $1,419.20 to pay for his $821.45 flight to St. Louis (leaving a credit of $597.75).  (AP Doc. 104-19, p. 2).  Cooley used a flight credit of $473.20 (presumably from credit # ending in 7127) to pay for his $453.20 return flight from St. Louis (leaving a credit of $20).  (AP Doc. 104-19, p. 5).

[32] AP Doc. 100, ¶ 11; AP Doc. 104-24; AP Doc. 104-25.  Cooley received $10,571.90 from Maxey-Fisher, PLLC in 2020 and $1,427.50 in 2021.  (AP Doc. 104-24; AP Doc. 104-25).  It is not clear if all of this compensation—totaling $11,999.40—was paid for work done while Cooley was employed by Datex.

lesions in his anal cavity and referred him to a colorectal specialist.  He testified he first learned that he may have had some form of cancer on October 17, 2020 and that later, on December 7, 2020, he underwent surgery to remove three sections of his anal cavity that were determined to have squamous cell carcinoma in situ.  By December 24, 2020, Cooley testified that he was cleared by his doctor to go on a ski trip in Colorado.  Cooley did not offer into evidence any medical records to support his claim of squamous lesions, carcinoma, or anal surgery.[33]

Cooley testified that he did not tell anyone that he had cancer before October 17, 2020, when he first learned that he had some form of cancer.  He also testified that there was no mention of him having cancer at the June 2020 emergency Board meeting regarding the *Wester* matter. Instead, he testified that at that emergency Board meeting, he insisted that Datex retain outside counsel to handle the *Wester* matter because he was in-house counsel, not litigation counsel, and he was not an expert in sexual harassment defense.  He did, however, serve as the corporate representative for Datex in the *Wester* matter.

Cooley testified that he did not take all of the PTO reflected in the Paylocity report.  He suggested that Michael Armanious may have tampered with the Paylocity report to make it look like he was taking excessive PTO.  Cooley testified about specific instances when Michael Armanious had texted him requesting Cooley's work passwords and Cooley gave them to him. Cooley even testified about a specific instance where Michael Armanious submitted a PTO request in Paylocity for certain days off for Cooley.

To support his contention that he did not take all of the PTO reflected in the Paylocity report, Cooley introduced a letter from Datex to the California Department of Industrial Relations, dated February 21, 2023, in which Datex stated that Cooley had 19.69 hours of used PTO at the

---

[33] In these proceedings, Datex repeatedly, unsuccessfully tried to obtain Cooley's medical records to investigate his claim that he had been diagnosed with cancer.

time of his termination and that Datex had paid him for this time.[34]   The letter was signed by Stephanie Gabler, Director of Employee Success at Datex.   Gabler was not called to testify.

Cooley testified that Datex terminated his employment on April 14, 2021 after Michael Armanious was served with Cooley's divorce papers.   Cooley also testified that Datex's contention that he essentially stopped working in March 2020 through his termination is not true.   At trial, Cooley described in detail the various work that he performed for Datex while employed there. This work included:[35] attending daily meetings with the executive team when he began his employment; preparing for the quarterly state of the company presentations; working on Datex's organizational chart and employee handbook; developing Datex's remote work policy; working on issues related to Datex's customer, Masy; creating an exit interview template for the company; collaborating with Jenny Armanious regarding a human resources onboarding course for "Datex University;" working on the Unicold agreement; helping Datex deal with the Covid-19 shutdown; working on rescinding Datex's Hollywood, California lease; proposing "Rules of Order" for, and leading, the daily meetings; dealing with legal issues related to Datex's office in Bulgaria; analyzing the CARES Act and PPP loan issues/requirements; terminating a Canadian employee, which required researching Canadian law; acting as the corporate representative in the *Wester* matter; retaining and working with outside counsel on the *Wester* matter; researching immigration laws relating to payments to an independent contractor; dealing with an employee complaint regarding Datex's compliance with Covid-19 protocol; dealing with the termination of a support and maintenance agreement by Datex's customer, EFS, and the protection of intellectual property; updating Datex's employment contracts to include a Code of Ethics and extremely broad post-employment restrictive covenants for Datex's C-level executives, directors, and employees;

---

[34] Doc. 102-4.
[35] The Court is not listing all of the work that Cooley testified about; instead, this is an overview.

researching ACA-compliance for Datex's health insurance plan; and interviewing people to fill an HR position at Datex.

Cooley also testified that he was overworked and needed Datex to hire an associate general counsel to help him. He interviewed two potential attorneys and recommended that Datex hire Shanna Lindemeyer. He also trained her.

Also, at times during Cooley's employment as Datex's General Counsel, he performed some personal legal work for members of the Armanious family.[36] Michael Armanious acknowledged that Cooley may have handled a personal, legal issue for his brother, Derek Armanious. Marie and Samir Armanious acknowledged that Cooley worked on construction issues related to Enterprise Estates Group, LLC, which is a member-managed LLC with Samir Armanious, Andrew Armanious, and Derek Armanious as its members.[37] Cooley testified that he dealt with a noise complaint by the HOA at Samir Armanious' Clearwater, Florida condo. Samir Armanious acknowledged that Cooley helped him deal with his insurance company when he had a roof leak at his house—this required Cooley to research insurance laws and to work with the insurance adjustor to resolve the claim.

Finally, the Court notes that Cooley did not testify at all regarding Datex's claim that he misused the Datex-issued American Express credit card by making the two purchases at the Apple Store after he resigned. Likewise, Cooley did not testify at all regarding Datex's claim that he misused Delta flight credits for flights paid for by Datex by using them to book personal travel after he left Datex. And, Cooley did not put forth any evidence of his damages for Datex's alleged conversion of his property that was previously in his office at Datex.

---

[36] AP Doc. 100, ¶ 12.
[37] AP Doc. 100, ¶ 24.

### III.  The Court's Findings of Fact and Conclusions of Law

Three matters are before the Court.  First, Datex filed its Proof of Claim 10-1, Cooley objected to it (BK Doc. 28), and Datex filed its response thereto (BK Doc. 35).  Second, Datex filed an adversary complaint alleging that its claim against Cooley is non-dischargeable under § 523(a)(2)(A), § 523(a)(4), and/or § 523(a)(6) (AP Doc. 1), Cooley filed an answer and affirmative defenses (AP Doc. 26), and the Court issued its summary judgment order, largely denying[38] Cooley's summary judgment motion (AP Doc. 90).  Third, Cooley filed a counterclaim for conversion[39] (AP Doc. 26), and Datex filed its answer and affirmative defenses (AP Doc. 62).

### A.  Datex's Proof of Claim 10-1 and Cooley's Objection Thereto

As previously stated, Datex has filed Claim 10-1 for $192,531.37, which is based on Datex's complaint against Cooley that was filed in state court before Cooley filed for bankruptcy.  Cooley objected to Datex's claim, arguing that he disputed liability and that the amount was unliquidated.

Objections to claims are governed by 11 U.S.C. § 502(a) providing that "[a] claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest . . . objects."  Section 502(b) provides that "if such objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim . . . as of the date of the filing of the petition, and shall allow such claim in such amount."

Federal Rule of Bankruptcy Procedure 3001(f) provides that "[a] proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and

---

[38] The Court granted Cooley summary judgment to the extent that Datex asserted a willful and malicious injury relating to Cooley's attempted PayPal transfer to his mother of over $5,000.  (AP Doc. 90).  Otherwise, the Court denied Cooley's motion for summary judgment.  (AP Doc. 90).

[39] The Court granted Datex's motion to dismiss the other counterclaims asserted against it, leaving only the conversion counterclaim for trial.  (AP Doc. 56).

amount of the claim." But where the objecting party can produce evidence at least equal in probative force to that offered by the proof of claim, the evidentiary burden shifts back to the claimant to prove the validity and amount of its claim by a preponderance of the evidence.[40] Here, the Court finds that Cooley produced evidence at least equal in probative force to that offered by Datex's proof of claim, and as a result, the evidentiary burden shifts back to Datex to prove the validity and amount of its claim by a preponderance of the evidence.

Datex asserted the following claims to support its proof of claim: (1) fraud, (2) breach of fiduciary duty, (3) damages for breach of employment contracts, and (4) conversion.[41] Accordingly, the Court will analyze each of these claims.

### 1. Fraud

Datex's fraud claim is based on Cooley allegedly lying about having anal cancer and needing to undergo treatments for it in order to deceive Datex into continuing to pay his full salary and benefits despite the fact that he was essentially no longer performing his job duties. Datex also claims that Cooley lied about having anal cancer in order to convince Datex to hire outside counsel and to hire Shanna Lindemeyer to assist with Datex's legal work. These allegations are hotly contested.

In order to prove fraud, Datex must show: 1) Cooley made a false representation to deceive Datex; (2) Datex relied on the misrepresentation; (3) Datex's reliance was justified; and (4) Datex sustained a loss as a result of Cooley's misrepresentation.[42] Datex contends that Cooley lied about having cancer, that it justifiably relied on Cooley's cancer lie, and as a result, Datex allowed

---

[40] *See In re Foley & Associates Const. Co., Inc.*, 2007 WL 2316939, at *1 (Bankr. M.D. Fla. Aug. 9, 2007) (quoting *In re Taylor*, 363 B.R. 303, 309 (Bankr. M.D. Fla. Mar. 5, 2007)).

[41] Datex also asserted a claim for injunctive relief for Cooley's alleged breach of contracts. However, the claims before this Court are for monetary damages.

[42] *See In re Bilzerian*, 153 F.3d 1278, 1281 (11th Cir. 1998) (citations omitted).

Cooley to essentially stop working while paying him his full salary and benefits while also incurring the cost of retaining outside counsel to handle the *Wester* litigation and hiring Lindemeyer to help Cooley with his work. The main dispute revolves around whether Cooley lied to Datex about having cancer, and if so, whether Datex was damaged by Cooley's lie.

As they say, there are two sides to every story, and the truth lies somewhere in the middle. It is clear to the Court that Cooley was not entirely truthful about his health with Datex. At best, he exaggerated his cancer scare. At worst, he outright lied and was never even faced with a possible cancer diagnosis. From the evidence before the Court (and the lack of medical records in response), the Court finds that Cooley lied to Datex about having cancer.

However, the Court finds that Cooley did not lie about having cancer prior to or during the June 2020 emergency Board meeting regarding the *Wester* matter. The Court simply found Cooley more credible on this issue. In fact, even his emails to others regarding his cancer diagnosis all indicate that the diagnosis occurred after the *Wester* demand on June 19, 2020.

However, regardless of when Cooley lied to Datex about having cancer, Datex did not prove by a preponderance of the evidence that it suffered any damages. The measure of damages for fraud is the amount that would fully compensate the claimant and restore the claimant to the position it would have been in had the fraud not been committed.[43]

Datex's version of the facts is that Cooley essentially stopped working after his alleged cancer diagnosis in March of 2020. Cooley's version is that his cancer scare existed from September 17, 2020 through the end of December, but regardless, he was so overworked that he needed Datex to hire an associate general counsel, Lindemeyer, in February of 2021. Again, the truth likely lies somewhere in the middle.

---

[43] *See Hollister Incorporated v. Zassi Holdings, Inc.*, 752 Fed. Appx. 888, 893 (11th Cir. 2018) (citations omitted).

The Court finds Cooley's version of the facts on this issue is more credible than Datex's version. Cooley essentially spent three hours testifying, in detail, about the work that he performed for Datex and for the Armanious family. While he may have missed some work due to the alleged cancer diagnosis, it is clear that he did perform substantial work for Datex. Furthermore, the Court questions the credibility of the Paylocity PTO report showing that Cooley took off the equivalent of 121 eight-hour workdays, especially when considered in conjunction with Datex's letter written to California Department of Industrial Relations.

Furthermore, even if Cooley lied about his cancer diagnosis as early as March 2020, the Court's finding regarding Datex's damages would be the same. Cooley testified about the work that he performed for Datex as of January 2020, and the Court finds that Datex would have needed to retain outside litigation counsel to handle the *Wester* matter regardless of when Cooley told Datex that he had been diagnosed with cancer. The testimony of the Armanious family members that in-house counsel was expected to handle every legal and litigation matter of the corporation was not credible and was openly belied by the fact that outside counsel was representing Datex in this very case.

Cooley testified that he was not an expert in sexual harassment defense and that he did not know anything about Title VII employment law. He also noted that since the claims were against an Armanious family member, his relation to the family would create an appearance of a conflict and certainly a lack of impartiality. Thus, even assuming that Cooley lied about having cancer in March of 2020, Datex still would have needed to retain outside litigation counsel to handle the *Wester* litigation. The Court also finds that Cooley spent a considerable amount of time managing the *Wester* litigation and reviewing the fees charged by outside counsel, as would be expected of in-house counsel.

Furthermore, Datex did not hire Lindemeyer until February of 2021, and Cooley was paid through April of 2021. There was no testimony presented by Lindemeyer or anyone at Datex regarding what work she did or whether she handled all legal matters to the exclusion of Cooley. Again, on this point, the Court finds Cooley's testimony that he trained Lindemeyer, a recent Stetson law school graduate with no work experience beyond internships, after she was hired by Datex to be credible.

Accordingly, the Court finds that Datex did not prove, by a preponderance of the evidence, that it sustained damages due to Cooley's cancer lie. Datex not only had the burden of proof on this issue, but Datex also had control of the potential documentary evidence to support its claim. Therefore, the Court finds that Datex is entitled to nothing on its fraud claim and sustains Cooley's objection to Datex's Claim 10-1 to this extent.

## 2. Breach of Fiduciary Duty

Next, Datex contends that Cooley breached his fiduciary duty to Datex by: (1) lying about having cancer and needing treatment in order to reduce his workload; (2) lying to Datex regarding its need to hire, and then fire, two law firms to handle the *Wester* matter; (3) misusing the Datex-issued American Express credit card by making two purchases at the Apple Store after resigning from Datex; (4) misusing Delta flight credits for flights paid for by Datex and cancelled by Cooley; (5) using Datex's confidential information to gain leverage in his divorce proceedings against Michael Armanious; (6) entering into a contract with Thomson Reuters on behalf of Datex without authority; and (7) performing legal work for Maxey-Fisher while employed by Datex.

"The elements of a claim for breach of fiduciary duty are: the existence of a fiduciary duty, and the breach of that duty such that it is the proximate cause of the plaintiff's damages."[44] It is

---

[44] *Gracey v. Eaker*, 837 So.2d 348, 353 (Fla. 2002) (citations omitted).

undisputed that Cooley was Datex's most senior and trusted legal advisor and that he owed Datex a fiduciary duty.[45]  Thus, the issue before the Court is whether the alleged breaches of fiduciary duty caused Datex damages, and if so, in what amount.

The first alleged breach of fiduciary duty is Cooley's lies about having cancer and needing treatment in order to reduce his workload.  While Cooley did breach his fiduciary duty to Datex with these lies, the Court has already found that Datex has not proven any damages caused by the cancer lies.

The second alleged breach of fiduciary duty is Cooley's alleged lie to Datex regarding its need to hire, and then fire, two law firms to handle the *Wester* matter.  The Court has already found that Cooley did not lie to Datex about its need to retain outside litigation counsel.  Furthermore, given Cooley's unfamiliarity with Title VII sexual harassment defense, Datex has not shown that it was damaged by retaining outside litigation counsel.

The third alleged breach of fiduciary duty is Cooley's misuse of the Datex-issued American Express credit card by making two purchases at the Apple Store after resigning from Datex for $99 and $660.16 for a replacement laptop and cell phone.  However, at the time that the purchases were made on April 2, 2021, Cooley was still employed by Datex.  Further, Samir Armanious testified that Cooley could use the credit card for business-related expenses, and there was no evidence before the Court that Cooley was not replacing his business cell phone and laptop.  As such, Datex did not meet its burden of proving that Cooley breached his fiduciary duty to Datex by making these two purchases.  Nor did Datex prove that Cooley kept the replacement equipment that he had purchased.

The fourth alleged breach of fiduciary duty is Cooley's misuse of Delta flight credits for

---

[45] AP Doc. 100, ¶ 3, 5, 6.

flights paid for by Datex and then used to book two personal trips to St. Louis and Hawaii after he stopped working for Datex.  At first blush, it would appear that Cooley's use of flight credits resulting from business flights paid for by Datex would be a breach of fiduciary duty.  However, it is unclear how Datex was damaged by Cooley's misuse, as the flight credits were for cancelled business flights in Cooley's name, and the resulting non-transferable flight credits were issued in Cooley's name.  Thus, it is not clear how Datex would have been able to use the resulting flight credits if Cooley had not used them, and as such, Datex has not shown that Cooley's use of the flight credits damaged Datex.  Accordingly, Datex did not meet its burden of proving that Cooley breached his fiduciary duty to Datex by using the flight credits for personal flights.

The fifth alleged breach of fiduciary duty is Cooley's alleged use of Datex's confidential information to gain leverage in his divorce proceedings against Michael Armanious.  There was no evidence presented regarding this alleged breach, and as such, Datex has not shown entitlement to relief for this claim.

The sixth alleged breach of fiduciary duty is Datex's contention that Cooley entered into a contract with Thomson Reuters on behalf of Datex without authority.  Again, there was no evidence presented regarding this alleged breach, and as such, Datex has not shown entitlement to relief for this claim.

The seventh alleged breach of fiduciary duty is the undisputed fact that Cooley performed legal work for Maxey-Fisher while employed by Datex.[46]  However, Datex did not present any evidence showing that it was damaged by this breach, beyond Samir Armanious stating that had he known that Cooley was performing legal work for others, he would have terminated him. Samir Armanious' assertion on this issue was not credible, particularly since he, himself, asked Cooley

---

[46] AP Doc. 100, ¶ 11.

to do non-Datex work.  The evidence is clear that Cooley resigned from Datex because of his relationship ending with Michael Armanious.  Datex then accelerated the separation once Cooley served divorce papers on Michael Armanious.  At that point, the war between Cooley and the Armanious family began.  It will no doubt continue well beyond this bankruptcy case with both sides behaving badly.

Accordingly, the Court finds that Datex did not prove, by a preponderance of the evidence, that it sustained any damages due to Cooley's alleged breach of fiduciary duty.  Therefore, the Court finds that Datex is entitled to nothing on its breach of fiduciary duty claim and sustains Cooley's objection to Datex's Claim 10-1 to this extent.

### 3.  Breach of Employment Contracts

Next, Datex contends that Cooley breached his employment contracts by: (1) lying about having cancer and needing treatment in order to reduce his workload; (2) lying to Datex regarding its need to hire, and then fire, two law firms to handle the *Wester* matter; (3) misusing the Datex-issued American Express credit card by making two purchases at the Apple Store after resigning from Datex; (4) misusing Delta flight credits for flights paid for by Datex and cancelled by Cooley; (5) using Datex's confidential information to gain leverage in his divorce proceedings against Michael Armanious; (6) entering into a contract with Thomson Reuters on behalf of Datex without authority; and (7) performing legal work for Maxey-Fisher while employed by Datex.

In order to prove its breach of contract claim, Datex must prove the existence of a contract, a material breach thereof, and resulting damages.[47]  There is evidence before the Court of two employment contracts entered into by the parties.  Therefore, this Court must analyze whether these allegations consist of a material breach of Cooley's employment agreements, and if so, the

---

[47] *See IPS Avon Park Corporation v. Kinder Morgan, Inc.*, 2023 WL 3750708, at *2 (11th Cir. June 1, 2023) (citations omitted).

amount of Datex's damages, if any.

The first alleged breach is Cooley's lies about having cancer and needing treatment in order to reduce his workload.  This is arguably a breach of the Code of Ethics provision in Cooley's second employment agreement.[48]  However, as previously stated, the Court has found that Datex failed to meet its burden of proving proximate damages.

The second alleged breach is Cooley's alleged lie to Datex regarding its need to hire, and then fire, two law firms to handle the *Wester* matter.  However, the Court has found that Cooley's recommendation to Datex that it retain outside litigation counsel was not an act that harmed Datex.  In fact, Cooley may have breached the "Recommendations for Improving Operations" provisions in both of his employment agreements had he not made that recommendation.[49]  As such, Datex has not shown entitlement to relief for this claim.

The third alleged breach is Cooley's misuse of the Datex-issued American Express credit card by making two purchases at the Apple Store after resigning from Datex.  However, this was

---

[48] The Code of Ethics provision states the following:
> Employee is bound by the provisions set forth in this Code of Ethics relating to ethical conduct, conflicts of interest, compliance with law and standards designed to deter wrongdoing.  Employee is subject to the following specific policies:
> A. Employee is responsible for full, fair, and accurate assessments and evaluations that accompany his/her job duties.  Employee shall bring to the attention of the Board of Directors any material information that he/she becomes aware of that affects the business operations of Employer. This includes any information Employer requires to fulfill its financial or operational obligations.
> B.  Employee is a C-Level executive within Employer's organization, and as such, Employee's personal activities reflect on Employer.  As such, Employee shall continuously maintain a pattern of professional and respectable behavior in all aspects of his/her personal affairs.

(AP Doc. 104-7).

[49] AP Doc. 104-1; AP Doc 104-7.  This provision states: "Employee shall make available to Employer all information of which Employee shall have any knowledge which is related to Employer's business operations and within the scope of Employee's employment responsibilities and shall make all suggestions and recommendations that will be of mutual benefit to Employer and Employee subject to the restrictive covenants of confidentiality to which Employee shall be governed by former business and contractual relationships."  (AP Doc. 104-1; AP Doc 104-7).

not a breach of any agreement, as Samir Armanious testified that there were no written agreements between Datex and Cooley regarding his use of the American Express credit card, and it is not even clear that the purchases were not business expenses. As such, Datex has not shown entitlement to relief for this claim.

The fourth alleged breach is Cooley's misuse of the Delta flight credits for flights paid for by Datex. However, Cooley's use of the flight credits occurred after Datex terminated his employment, and as such, it is unclear how it could be a breach of the employment agreements. Further, the Court has already found that Datex has not shown that it was damaged by Cooley's use of the flight credits for personal flights. As such, Datex has not shown entitlement to relief for this claim.

The fifth alleged breach is Cooley's alleged use of Datex's confidential information to gain leverage in his divorce proceedings against Michael Armanious. While such an act would arguably violate the confidentiality provisions in both employment agreements,[50] there was no evidence at the trial of Cooley's misuse and disclosure of such information. As such, Datex has not shown entitlement to relief for this claim.

The sixth alleged breach is Datex's contention that Cooley entered into a contract with Thomson Reuters on behalf of Datex without authority. While such an act would arguably violate the provision in Cooley's second employment contract that states that Cooley could not make any contracts on behalf of Datex without first obtaining written consent from the Board,[51] there was

---

[50] The confidentiality provisions state: "Following the cessation of Employee's employment with Employer, Employee shall (a) protect and safeguard the confidentiality of the confidential information belonging to Employer and provided to Employee by Employer during Employee's employment with no less than the same degree of care as Employee would use in protecting his/her own confidential information, but in no event with less than a commercially reasonable degree of care; (b) not use Employer's confidential information for any reason or purpose whatsoever; and (c) not disclose any such confidential information to any person or entity." (AP Doc. 104-1; AP Doc. 104-7).
[51] AP Doc. 104-7.

no evidence at the trial of Cooley's entering into a contract with Thomson Reuters on behalf of Datex without authority. As such, Datex has not shown entitlement to relief for this claim.

The seventh alleged breach is Cooley's performance of legal work for Maxey-Fisher while employed by Datex. Even if Cooley breached the "Other Employment" provision of his employment contracts,[52] the Court has already found that Datex has not shown that it was damaged by this conduct. As such, Datex has not shown entitlement to relief for this claim.

Accordingly, the Court finds that Datex did not prove, by a preponderance of the evidence, that it sustained any damages from Cooley's alleged breach of his employment contracts. Therefore, the Court finds that Datex is entitled to nothing on its breach of contracts claim and sustains Cooley's objection to Datex's Claim 10-1 to this extent.

### 4. Conversion[53]

Next, Datex asserts a claim for conversion based on the two charges Cooley made at the Apple Store using his Datex-issued American Express card and his misuse of Delta flight credits for flights paid for by Datex and cancelled by Cooley. In order to succeed on its conversion claim, Datex must prove: (1) an act of dominion wrongfully asserted by Cooley; (2) over Datex's property; (3) that is inconsistent with Datex's ownership of the property.[54]

Datex's claim for conversion based on the two charges Cooley made at the Apple Store using his Datex-issued American Express card for a replacement laptop and cell phone fails. As previously stated, Datex did not prove that Cooley's use of the American Express credit card for

---

[52] Cooley's employment contracts stated that "Employee shall devote all of his/her time, attention, knowledge, and skills solely to the business and interest of Employer" and that "Employee shall not, during the term of this Agreement, be interested directly or indirectly, in any manner, . . . in any other business similar to Employer's business or any allied trade." (AP Doc. 104-1; AP Doc. 104-7).

[53] Datex also asserted a conversion claim based on Cooley's attempted transfer of over $5,000 to his mother on April 12, 2021. (BK Claim 10-1). In the adversary proceeding, Cooley moved for summary judgment on this claim (because the transfer was reversed), and the Court granted Cooley's motion. (AP Doc. 90).

[54] *In re Bentley*, 600 B.R. 115, 118 (Bankr. M.D. Fla. 2018) (citations omitted).

these purchases was wrongful.  At the time that the purchases were made on April 2, 2021, Cooley was still employed by Datex.  Further, Samir Armanious testified that Cooley could use the credit card for business-related expenses, and there was no evidence before the Court that Cooley was not replacing his business cell phone and laptop.  As such, Datex has not shown entitlement to relief for this claim.

Datex's claim for conversion is also based on Cooley's misuse of Delta flight credits for flights paid for by Datex, which he used to purchase personal travel to St. Louis and Hawaii.  Datex presented sufficient evidence to prove that it paid for certain flights that Cooley cancelled, which became $2,717.45 in flight credits that Cooley used to pay for his personal travel.  However, Datex has not shown that Cooley's use of the flight credits deprived Datex of the ability to use those flight credits—the flight credits were issued in Cooley's name and were non-transferable, and Datex has not shown that it could have used the flight credits had Cooley not used them.  As such, Datex has not shown entitlement to relief for this claim.

### 5.  Conclusion

Based on the above, the Court finds that Datex has not met its burden of proving its damages on any of the claims that form the basis for its proof of claim.  As such, the Court sustains Cooley's objection to Datex's claim and disallows Datex's Claim 10-1 in its entirety.

### B.  Datex's Adversary Complaint for Non-Dischargeability

Datex filed its adversary complaint seeking to have the debt owed to it by Cooley to be deemed non-dischargeable under 11 U.S.C. § 523(a)(2)(A), (a)(4), and/or (a)(6).  However, having disallowed Datex's Claim 10-1, there is no debt owed by Cooley that can be found to be non-dischargeable.  As such, Cooley is entitled to judgment on all counts of Datex's non-dischargeability complaint.

### C.  Cooley's Counterclaim

Cooley asserted a counterclaim for Datex's alleged conversion of his property that was previously in his office at Datex.  However, Cooley did not put forth any evidence of his damages for Datex's alleged conversion.  Cooley concedes in his closing argument that without any evidence of damages, the Court must find in favor of Datex on Cooley's counterclaim.

### D.  Summary

Based on the above, it is **ORDERED** that:

(1)    The Court **SUSTAINS** Cooley's objection to Datex's Proof of Claim 10-1 (BK Doc. 28) and disallows Datex's claim in its entirety.

(2)    The Court finds in favor of Cooley on all counts of Datex's adversary complaint (AP Doc. 1).

(3)    The Court finds in favor of Datex on all counterclaims asserted by Cooley (AP Doc. 26).

(4)    The Court will enter judgment on the adversary complaint and counterclaims consistent with this order.

It is **SO ORDERED.**

Service of this Order other than by CM/ECF is not required.